UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JUDITH YIGAL and OMRI YIGAL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CV421-079 |
| ) | |
| THOMAS L. COLE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

*Pro se* plaintiffs Judith and Omri Yigal filed this case alleging misconduct by multiple defendants in a state-court child-custody proceeding. *See generally* doc. 1. The Court previously explained to plaintiffs that their pleadings were impermissible "shotgun pleadings," and directed them to file an Amended Complaint. *See* doc. 24 at 3-6. The Court granted plaintiffs additional time to prepare their amendment. *See* doc. 28. Instead of an amendment, they filed several motions, discussed below. *See* docs. 31, 32, 33.

Before discussing the Plaintiffs' motions, some more details of the procedural history of this case provide important context. Plaintiffs originally filed their Complaint and submitted an Amended Complaint

in the United States District Court of the Western District of Washington. *See* docs. 1 & 4. The original Complaint comprised 56 pages of allegations which are, charitably, hard to understand. *See, e.g.,* doc. 1 at 19 (alleging "[j]uridical terror attack and hate crimes under the color of law," that "included white paper warfare of juridical blackface and graffiti, passive-aggressive violence disbursement of the continuity of our Family for personal pleasure and improper financial gain (federal funds such as Social Security, TANF, Title IV-b, Military Pension, etc.) and the mutilation of our neurological bonds, to each other."). The proposed Amended Complaint comprised 79 pages of allegations, which are equally difficult to follow. *See, e.g.,* doc. 4 at 9 ("Like a Count Olaf (in <u>Bad Beginnings</u>) [the defendants'] **obsession** was hate—a crusade of terror to obstruct a Cherokee-Jewish and Filipino child from religious beliefs and deprive her of a relationship with her biological mother and father, in perpetuity; and they did so because of the Family's actual and perceived race, religion, marital status, gender, familial status and perceived disability."). They subsequently filed a motion to "add a defendant," that included documents titled "Declaration of Sexual Exploitation—An Affidavit," "Declaration of Stockholm Syndrome Under

the Color of Law—An Affidavit," and "Declaration of Family Violence, Anti-Semitism, and Filial Cannibalism—An Affidavit." Doc. 12 at 4, 18, 30. A Magistrate Judge in the Western District of Washington transferred the case to this Court. Doc. 13.

After the transfer, Plaintiffs moved to transfer this case again, to the Philippines. *See* doc. 16. The Court noted defects in the Plaintiffs' request to proceed *in forma pauperis* and denied their request to "transfer" this case to a foreign tribunal. *See generally* doc. 19. The Plaintiffs addressed the defects in their motion and were granted leave to proceed *in forma pauperis*. *See* doc. 24 at 2. The Court then screened the Complaint and Amended Complaint. *Id.* at 3-5. The Court explained that the nature of the pleadings made it "difficult, if not impossible, to discern what causes of action are asserted in the pleadings and against whom." *Id.* at 4. The Court noted that the pleadings' "generalized references to . . . constitutional amendments" and allegations of criminal violations were not sufficient to state a claim. *Id.* at 5. The Court afforded plaintiffs an opportunity to amend. *Id.* at 6. The three motions discussed below are charitably construed as the substantive response to that direction. *See Castro v. United States*, 540 U.S. 375, 381 (2003)

3

("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category.").

Plaintiffs' first motion, titled a "Motion for Clemency," objects to difficulties plaintiffs' face in amending their pleading. *See* doc. 31 at 1. A provisional version of the Amended Complaint is attached to the Motion. *See id.* at 1 (stating plaintiff Omri Yigal has completed "editing" the first 41 pages of the attached amendment); *see also, id.* at 3-84 (proposed amendment). As before, the proposed amendment includes numerous statutory references that cannot possibly be implicated in this civil case. *See, e.g., id.* at 7; *see also* doc. 24 at 4-5 (explaining "criminal statutes cannot provide the basis for this civil action and plaintiffs cannot use this case as an avenue to seek criminal prosecution of defendants." (citing, *inter alia., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). The substance of the attached pleading, including the portion Yigal states has been "edited," does not correct any of the defects identified in the Court's prior Order. For example, "Count One" of the attached amendment, rather than identifying a cause of action against a particular defendant or defendants includes "[d]eformation [sic] of

4

character, incendiary language, slander, assault, and violation of 1st and 8th Amendment under color of law." Doc. 31 at 22. The substantive allegations do not provide much clarity. The allegations against Defendant Erica Fath, for example, state in a wholly conclusory fashion that she "knowingly and willfully made materially false, fictitious, and fraudulent statements, including incendiary speech and seditious libels, with actual malice and reckless disregard for the truth, to stir public officials to sedition." *Id.*

To the extent that the Court can discern the allegations, it appears that the Plaintiffs allege that a state-court judicial proceeding constituted a "RICO Enterprise." *See id.* at 4-5. As before, the amendment continues to be "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Doc. 24 at 4 (quoting *Adams v. Huntsville Hosp.*, 819 F. App'x 836, 838 (11th Cir. 2020)); *see also, e.g.,* doc. 31 at 20 ("In the same manner as the internment and death camps of Treblinka, Belzec, Majdanek, Sobibor, and Auschwitz, the veterans' clinic was exactly the same. Like the German government, the American government clinic had at their disposal: doctors, dentist, lab techs, nurses, pharmacists,

5

hospitals, lawyers, judges, courts, building engineers, custom oven/crematorium manufactures [sic] . . . technology, science, food supply, water and most importantly, **hate**. Both governments had everything they needed and more, at their fingertips, eager to do the business of destroying human life."). The proposed amendment, therefore, remains subject to dismissal as an impermissible "shotgun pleading." *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("A district court has the inherent authority to control its docket . . . , which includes the ability to dismiss a complaint on shotgun pleading grounds." (internal quotation marks and citations omitted)).

As explained above, the Court gleans from the allegations that the Plaintiffs are attempting to relitigate a state court's child-custody determination by alleging that those proceedings amounted to an unlawful conspiracy or violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.[1] The relief sought would

---

[1] The Court attempted to parse through the allegations, and it appears that the central acts of the alleged "RICO Enterprise," are actions taken by defendant Cole, identified as "Judge, Chatham County Juvenile Court," in his judicial capacity. *See* doc. 31 at 4-5. The "common purpose" of the alleged "RICO Enterprise was stated by Thomas Cole, in the falsification of a juridical document to maintain a system of systemic oppression in perpetuity." *Id.* at 4. Plaintiffs subsequently reveal that the "juridical document" in question was court order revoking Omri Yigal's custody of his minor daughter. *See id.* at 5 ("In that falsification of a juridical document, [Cole]

seem to amount to a reversal of the state court's decision, in the guise of an injunction. *See* doc. 31 at 83 (seeking that the minor "be restored and returned to her father and mother, as she was before the RICO enterprise attacked the Yigal and Santig families."). This Court has already rejected these Plaintiffs' attempt to relitigate the custody determination. *See Yigal v. Butler*, CV421-230, doc. 28 (S.D. Ga. Mar. 21, 2022). For the reasons explained in that Order, there is no plausible legal basis for Plaintiffs to challenge the state-court's custody disposition in this Court. *Id.* at 3; *see also* CV421-230, doc. 23 at 2-5 (S.D. Ga. Feb. 14, 2022).

The Plaintiffs have also moved for a "default judgment." Doc. 32. The motion does not even purport to comply with the requirements for

---

wrote, 'R.Y. shall not be returned to her father without further order of the Court'; and armed with the power of his position, this course of conduct became the common purpose for the RICO enterprise."). Although the original Complaint refers to "juridical papers" the alleged content of those papers strongly implies, to say the least, that they are judicial decisions. *See, e.g.,* doc. 1 at 20 (alleging that Cole stated in "a second counterfeit juridical paper," that "venue is proper," and made findings concerning the minor's "best interest," and appointed a guardian), 21 (alleging that the "second of three counterfeit juridical papers[ was] entitled ORDER GRANTING TEMPORARY CUSTODY"). As the late Honorable B. Avant Edenfield succinctly stated: "RICO claims must be denied if they simply constitute another way of attacking a judge's rulings." *Blackburn v. Calhoun*, 2008 WL 850191, at *21 (N.D. Ala. Mar. 4, 2008) (Edenfield, J.). Beyond the allegations against Judge Cole, it further appears that many of the other defendants' allegedly tortious conduct amounted to their participation in the proceedings the Yigals dispute. *See, e.g.,* doc. 1 at 32 (referring to allegedly false statements to an unspecified "tribunal," that appears to be a juvenile court proceeding). Thus, even if the Court could sift through the labyrinthine pleadings, it appears that they are founded upon a meritless legal theory.

7

such a motion. *See* Fed. R. Civ. P. 55. Among the reasons stated for granting a default judgment, Plaintiffs include an allegation that defendants "persecuted the child, mother, father, and Filipino family in a horrific campaign of terror, torture, trauma, and trafficking in violation of the Uniform Criminal Code." Doc. 32 at 1. There is, however, no allegation that any defendant has been served. *See generally id. Cf., e.g., Zaldivar v. D. Ray James Corr. Facility*, 2020 WL 8254491, at *3 (S.D. Ga. Dec. 31, 2020) ("A default judgment is not warranted because Defendants have not been served, and it is impossible that Defendants 'failed to plead or otherwise defend' themselves." (citations omitted)). The motion attaches a number of documents whose relevance to any claim is obscure, at best. *See* doc. 32 at 5-31. Rather than actually seeking a default judgment, the document appears to add additional claims for relief, including "[d]efunct [sic] the unlawful campaign of terror and torture, the falsification of documents, the financial exploitation, and the extermination of knowledge of self (at the hands of public officials under the color of law) by executing the attached order." *Id* at 2. The attached proposed order would direct "that the minor child be returned to her biological parents and Filipino family without delay."

*Id.* at 4. In substance, then, the motion is either a reiteration of the claims Plaintiffs have already asserted or an attempt to add additional claims. In either case, the Motion does not provide any authority suggesting a meritorious, or even cognizable, legal theory.

Finally, Plaintiffs have filed a document titled "Interlocutory Appeal and Motion for Extraordinary Relief." Doc. 33 at 1. As with their prior pleadings, the motion simply reiterates their desire to undo to the state court's custody determination. *See id.* at 3 (concluding "[w]herefore, in the spirit of constitutional freedom, and justice, we ask this Honorable Court to return the innocent, defenseless, and abused minor child to her origins and her biological parents, without further delay; for refusing to exercise the authority of this Honorable Court to do so, causes more psychological and physical harm, exposure to danger, and increased threats of death, in the Defendants' unhealthy, unstable, and criminal enterprise.") The only authority cited in the Motion is John Locke's *Two Treatises on Government*. *See id.* at 2-3. As with Plaintiffs' other pleadings, the Motion does not identify any plausible basis for this Court to review a state court's disposition of a child-custody case.

As discussed above, given Plaintiffs' failure to submit the required Amended Complaint, the Court has attempted to review all of the pleadings filed to date to determine whether, charitably construed, they state any plausible claim. They do not. To the extent that the pleadings are comprehensible at all, they represent an attempt to relitigate a state child-custody determination in this Court, whether directly or via a not-entirely-discernable tort theory. As this Court has previously explained, it is not empowered to review or reverse child-custody determinations made by state courts. *See* CV421-0230, doc. 28 at 3. The Supreme Court has explained that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Since the Plaintiffs are proceeding *in forma pauperis*, the Court must "dismiss the case at any time if the court determines that . . . the action . . . is frivolous." 28 U.S.C. § 1915(e)(2)(i). The Court can discern the Plaintiffs' intense feelings about the state court's custody determination, but it can discern *no* plausible legal basis for the claims asserted in the voluminous pleadings filed by the Plaintiffs. *Cf., e.g., Smith v. Hildebrand*, 244 F App'x 288, 289-90 (11th Cir. 2007) (affirming district court's dismissal of RICO claim alleging "that as part of a

racketeering enterprise, judges who presided over [plaintiff's] criminal and habeas proceedings; prosecutors who prosecuted the criminal charges and later probation violations against her; her probation officer; an independent court reporter; and her public defender acted and conspired to deprive her of her liberty and property in the conduct of her criminal proceedings," as frivolous, under § 1915(e)(2)).

Accordingly, Plaintiffs' Amended Complaint, doc. 4, should be **DISMISSED** and all pending motions, docs. 31, 32 & 33, **DENIED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 29th day of July, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA